UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL WILLIAMS, | : | CIVIL ACTION NO. |
| | : | 3:02 CV 02213 (WWE) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| THE GILLETTE COMPANY, | : | |
| | : | |
| Defendant. | : | MARCH 5, 2004 |

**DEFENDANT'S REPLY
TO PLAINTIFF'S OPPOSITION
TO MOTION TO COMPEL PRODUCTION OF MEDICAL RECORDS**

In his short Opposition Brief, one without citation to any legal authority whatsoever, the Plaintiff makes just one argument against being compelled to produce his mental health records in this mental disability discrimination case: he is concerned about maintaining the privacy of those records. Significantly, the Plaintiff does not argue, nor could he, that the requested records, to which he posed no objection when responding to Gillette's production requests, are not discoverable under any of his theories of disability discrimination. In fact, the Plaintiff expressly concedes that the requested records are probative on two portions of his claims--discrimination based on actual disability, and compensatory damages as part of the relief sought—but he stops short of actually withdrawing those two portions of his claims. (Opp. at 2.) For these reasons, this Court should reject the Plaintiff's arguments and should grant Defendant's motion to compel production of the medical records.

*Privacy*

Plaintiff argues that, after having filed a mental disability discrimination claim against Gillette, he should be allowed to keep his mental health records private. This argument is, as a matter of law, wrong because courts have routinely held that such records are probative in mental disability cases and that assertion of a mental disability claim waives any right to privacy of medical records. See Patterson v. Chicago Assoc. for Retarded Children, No. 96cv4713, 1997 U.S. Dist. LEXIS 8339, at *8 (N.D. Ill. 1997) ("By stating in her complaint 'Plaintiff is disabled and suffers from a mental illness'…[plaintiff] put her mental condition at issue and waived any claims of privilege to relevant information that her psychiatrist might possess."). Moreover, as a matter of practicality, the parties could easily agree on a confidentiality order that would restrict the use of Plaintiff's mental health records and any other confidential documents exchanged between the parties. Accordingly, even if Plaintiff's privacy concerns were well-founded legally, they could be resolved expeditiously and are thus of no consequence here.

*Discoverability of Medical Records*

The Plaintiff expressly admits in his brief that his mental health records are relevant and discoverable on the issue of whether he was actually disabled under state and federal discrimination law and whether he suffered compensable emotional distress as a result of Gillette's alleged discrimination against him. (Opp. at 2.) The plaintiff acknowledges that his failure to produce these records "can properly be deemed to be a means of waiving the claim as to actual disability." He similarly "does concede that the failure to produce records in this case

- 2 -

compromises the ability of the defendant to demand against emotional distress damages," and that the "court can rule that the plaintiff has waived all claims of emotional distress."

The Plaintiff has not, however, withdrawn either his actual disability claim or his claim for emotional distress damages. His characterization of the issues, however, suggests that his preference would be for this Court to order the records produced (given his concession that they are probative of his claims) and then to sanction Plaintiff with dismissal of those claims[1] when he refuses to comply with the order compelling production. Seeking to use the Court's powers to force him to do that which he acknowledges must be done is improper to say the least.

Even putting aside the claims of actual disability discrimination and emotional distress, however, the Plaintiff's mental health records are discoverable even if his sole theory were perceived disability discrimination.[2] Under this theory, the Plaintiff must prove that Gillette regarded him as having an "impairment" as that term is defined under the ADA.

---

[1] The Plaintiff assumes that, if he is ordered to produce his mental health records but refuses to do so, this Court would dismiss only his claims of actual disability discrimination and emotional distress damages. Such conduct--refusing to comply with a Court order to produce mental health records--would, however, lead Gillette to seek dismissal of all claims under Fed. R. Civ. P. 37(b)(2), particularly because Plaintiff has conceded that those records are relevant to some of his claims. See, e.g., Internet Law Library, Inc. v. Southridge, 2003 U.S. Dist. LEXIS 11508 (S.D.N.Y. 2003) (dismissing complaint because of disregard of court's orders); J-Square Marketing v. Sipex, Inc., 1999 U.S. Dist. LEXIS 12395 (D. Conn. 1999) (same).

[2] It is significant that Plaintiff's allegations of perceived disability discrimination are minimal at best, in comparison to the allegations describing alleged actual disability discrimination. Although Plaintiff makes a passing reference to "perceived" disability in Paragraph 1, no factual allegations support it, and, instead, all factual allegations point to his actual disability claim.

"There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has [an] impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.  In both cases, it is necessary that a covered entity entertain misperceptions about the individual -- it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Sutton v. United Air Lines, 527 U.S. 471, 489, 119 S. Ct. 2139, 2149-2150 (1999); Cousins v. Howell Corp., 113 F. Supp. 2d 262, 272 (D. Conn. 2000).

Whether Gillette had a "*mis*conception" about Plaintiff's capabilities is thus the critical issue on a perceived disability claim and will require exploration of Plaintiff's actual mental health.  For example, if Plaintiff did in fact suffer a substantially limiting mental impairment, then any perception of disability on Gillette's part would not be improper, and the Plaintiff's claim of perceived disability discrimination would necessarily fail.  Indeed, because Plaintiff actually sought short term disability benefits because of an alleged mental health condition, Plaintiff's actual mental health is central to the dispute, whether Plaintiff's theory is actual or perceived disability discrimination, or both.

The requested psychiatric records are further relevant to the issue of whether the Plaintiff was otherwise qualified to perform the essential functions of his job, also making them discoverable.  Assuming that the Plaintiff could show that Gillette improperly perceived him as having a substantially limiting impairment, the Plaintiff would still be required to demonstrate, as a

predicate to proving his disability claim, that he was able to perform the essential functions of his position with or without reasonable accommodation. Once again, because Plaintiff actually requested short term disability leave for an alleged mental disability, it is fully appropriate to allow Gillette to obtain discovery on his mental health as a means of exploring whether he could perform the essential functions of his job.

Finally, the Plaintiff's mental health records are relevant on important issues of credibility. In September, 2000, the Plaintiff requested and was granted a four-month leave of absence, allegedly to care for his ailing mother. (Williams' Dep. at 64-69, attached as Exhibit A.) At the end of his approved leave, the Plaintiff failed to return to work, instead requesting short term disability leave for his own alleged mental disability. At his deposition, the Plaintiff was unable to articulate any ailment suffered by his mother at the time he took leave to care for her, except for her advanced age of 64. Given the incredulity of Plaintiff's testimony as to the real reason for his taking leave in September, 2000, Gillette is entitled to explore whether it was Plaintiff's own health needs, rather than his mother's, that may have led or contributed to his request for leave in September, 2000.

For all of the foregoing reasons, Gillette requests this Court issue an order compelling the plaintiff to produce his mental health records from January 1998 to the present. In addition, Gillette requests that this Court issue an order compelling Plaintiff to return to the jurisdiction for a continued deposition concerning the mental health records he is ordered to produce and/or the particulars of the perceived disability discrimination theory that he has now articulated in his Opposition.

DEFENDANT,
THE GILLETTE COMPANY


By _____
    Victoria Woodin Chavey ct14242
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, Connecticut 06103-3499
    (860) 275-0100
    Its Attorneys


### **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was sent via facsimile and first class mail on this date to:

Norman Pattis, Esq.
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510


_____
Victoria Woodin Chavey